IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDWIN CRESPO, DONTE SMILEY, TONY SERRANO, JOSE SANTIAGO, SIDNEY WRAY, and ANTHONY WASHINGTON, Plaintiffs, | ) | |
| v. | ) | |
| NEW YORK CITY POLICE OFFICER JOSEPH FRANCO, CITY OF NEW YORK, and other as-yet-unidentified officers of the New York Police Department, | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**COMPLAINT**

Plaintiffs EDWIN CRESPO, DONTE SMILEY, TONY SERRANO, JOSE SANTIAGO, SIDNEY WRAY, and ANTHONY WASHINGTON, by their attorneys, Loevy & Loevy, complain of Defendants New York City Police Officer Joseph Franco and Unknown Officers (collectively, "Defendant Officers") and City of New York, and states as follows:

**INTRODUCTION**

1. For over a decade, the New York City Police Department ("NYPD") employed the Defendant Officers, including Defendant Joseph Franco, who used their power to engage in massive corruption, and destroy the lives of innocent people.

2. During his years on the force, Defendant Franco conspired with the other Defendant Officers to violate the rights of innocent people. In particular, the Defendant Officers would fabricate evidence and suppress exculpatory evidence to frame innocent individuals for crimes they did not commit.

3. Specifically, Defendant Franco has framed over hundreds of other innocent people in the last decade as a result of the policies and practices of the New York Police Department described below.

4. The innocent people arrested by the Defendant Officers tried to ring the alarm bells to alert the NYPD of the Defendant Officers' misconduct, but their voices were silenced, and their stories of injustice ignored.

5. Finally, in 2019, Defendant Franco was indicted by two separate grand juries in New York County for fabricating evidence, framing innocent people, and committing perjury.

6. Shortly after Defendant Franco was indicted, Defendant Franco was fired from the NYPD, and is awaiting trial on multiple counts of first-degree perjury and related charges.

7. Defendant Franco's misconduct was not just restricted to one borough but infected the judicial process throughout multiple boroughs.

8. The Bronx District Attorneys' Office's Conviction Integrity Bureau (CIB) sought to repair the widespread harm Defendant Franco had wrought and engaged in a sweeping review of the cases in which Defendant Franco was the essential witness. In January 2022, Bronx District Attorney Darcel D. Clark announced that 257 convictions have already been dismissed due to Defendant Franco's "compromised credibility" and estimated that the CIB will request the dismissal of over 250 additional cases in the coming year.

9. Defendant Franco's misconduct was so egregious that District Attorney Clark commented that that his office could not "stand behind the convictions."

10. On April 7, 2021, Brooklyn District Attorney Eric Gonzalez requested vacaturs for 90 individuals whose convictions relied on Defendant Franco's testimony because, according

to District Attorney Gonzalez, "knowingly and repeatedly framing innocent people obliterates the credibility of any police officer . . . ."

11. Based on the evidence against Defendant Franco, Gonzalez stated that he had "lost confidence" in Defendant Franco's work.

12. Similarly, Bridget G. Brennan, New York City's Special Narcotics Prosecutor, requested case dismissals for 24 individuals in New York City who pled guilty to charges directly related to the work of Defendant Franco, because the "perjury and official misconduct accusations against the detective directly impugn his integrity and credibility."

13. Plaintiffs bring this action to obtain justice and redress the devastating injuries that Defendants have caused them.

**JURISDICTION AND VENUE**

14. This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Plaintiffs' rights secured by the U.S. Constitution.

15. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper under 28 U.S.C. § 1391(b). The majority of Plaintiffs reside in this giving rise to Plaintiffs' claims occurred within this judicial district.

**PARTIES**

17. Plaintiff Edwin Crespo is a resident of New York County, but at the time of events giving rise to this lawsuit, Plaintiff Crespo was a resident of Bronx County.

18. Plaintiff Donte Smiley 29 years old and was still in high school when he was wrongfully incarcerated. Plaintiff Smiley is a resident of Kings County, but at the time of events giving rise to this lawsuit, Plaintiff Smiley was a resident of Bronx County.

19. Plaintiff Tony Serrano is 48 years old and a resident of Essex County, New Jersey, but at the time of events giving rise to this lawsuit, Plaintiff Serrano was a resident of Bronx County.

20. Plaintiff Anthony Washington is 51 years old and has two children. Plaintiff Washington is currently a resident of Queens County, but at the time of events giving rise to this lawsuit, Plaintiff Washington was a resident of Bronx County.

21. Plaintiff Jose Santiago is 45 years older and the father to two children. Plaintiff Santiago is a resident of Bronx County.

22. Plaintiff Sidney Wray is 49 years old and was born and raised in Bronx, NY. He continues to be a resident of Bronx County.

23. At all times relevant hereto, Defendant Franco and other unknown law enforcement officers (collectively, the "Defendant Officers") were police officers in the New York Police Department ("NYPD") acting under color of law and within the scope of their employment for the City of New York. They are entitled to indemnification under N.Y. Gen. Mun. Law § 50-k and by contract. The supervisory Defendants facilitated, condoned, and approved the constitutional violations committed by their subordinates.

24. Defendant City of New York is a New York State municipal corporation and is and/or was the employer of each of the Defendant Officers. The City of New York is liable for the acts of the Defendant Officers, which were undertaken within the scope of their employment for the City.

**DEFENDANT FRANCO'S PATTERN OF MISCONDUCT**

25. Defendant Franco has a history of engaging in precisely the kind of police misconduct that occurred in Plaintiffs' cases, including fabricating and concealing evidence in

the course of maliciously prosecuting innocent persons. In addition to the cases in which Plaintiffs have been exonerated, there are dozens of other identified cases that pre- and post-date Plaintiffs' cases during which Franco engaged in serious investigative misconduct.

26. For example, Chinedum Eto has alleged that in 2016, Eto was severely beaten by Defendant Franco and fellow officers during an arrest in New York County for two charges of unlawful possession of a weapon. In Eto's civil suit against the City, Eto alleged that Defendant Franco and other NYPD officers provided multiple materially false statements to the New York County District Attorney to justify his arrest and prosecution, which led to his wrongful imprisonment for four days. The parties settled on April 23, 2018.

27. In 2017, Tameeka Baker was arrested by Defendant Franco for the criminal sale of narcotics and spent one year and five months in custody before her conviction was vacated. In Baker's civil suit against Defendant Franco and the City of New York, Baker alleged that Defendant Franco and other NYPD officers falsely testified in a grand jury proceeding that the officers had observed Baker participate in a narcotics sale. The prosecutor requested vacatur of Baker's conviction when video footage showed that Defendant Franco had lied about observing any drug sale having taken place. Baker settled her claims against the City and Defendant Franco in 2021.

28. In 2018, Michael Romain was arrested on marijuana charges by Defendant Franco and forced to spend 24 hours in custody and endure months of criminal proceedings until all charges were dropped. In Romain's suit against the City, Romain alleges that he was racially profiled by Defendant Franco and fellow NYPD officers, who submitted false allegations to the New York County District Attorney in order to secure his conviction. The case was settled in 2019.

29. In 2019, Defendant Franco was charged in a sixteen-count indictment that covered three incidents. The grand jury voted to indict Defendant Franco based on the following findings:

a. On February 21, 2017, Defendant Franco's false statements led to the arrest of Julio Irizarry in New York County. Defendant Franco claimed that he saw Irizarry sell drugs to an unidentified man inside the lobby of the building, however, the video from the lobby showed that there was no drug sale in the lobby and Defendant Franco was not present in the building to observe the sale transpire. Defendant Franco memorialized his false statements in police paperwork that became part of the NYPD and New York County District Attorney's official case files, and falsely testified in Irizarry's subsequent grand jury proceeding. Irizarry was sentenced to three years in prison before his conviction was vacated.

b. On April 23, 2018, Defendant Franco falsely claimed to have witnessed Turrell Irving give cocaine to a woman in an apartment lobby, who subsequently sold the cocaine to an undercover officer. Video from this incident revealed that the woman merely held the door open for Irving as he entered the building and she exited on her way to meet the undercover officer. Defendant Franco memorialized his false statements in police paperwork that became part of the NYPD and New York County District Attorney's official case files, and falsely testified in Irving's subsequent grand jury proceeding. Because of Defendant Franco's false testimony, Irving spent three days in custody.

c. The above-referenced incident involving Tameeka Baker that the City and certain NYPD officers settled.

30. Given this history of misconduct and the City of New York's failure to meaningfully discipline Defendant Franco and others, it is apparent that Defendant Franco engaged in such misconduct because he had every reason to believe that the City of New York and its police department condoned his behavior.

31. As of the filing of this complaint, over 250 individuals across three boroughs have had their convictions vacated as a result of Defendant Franco's misconduct. Investigation continues, and more exonerations are expected to be forthcoming.

32. Defendant Franco was charged criminally in connection with the foregoing misconduct in Manhattan. His case is ongoing.

**DEFENDANT NEW YORK CITY'S RESPONSIBILTY**

33. As set forth above, the City of New York failed to meaningfully discipline its police officers, including Defendant Franco and the other Defendant Officers, for their misconduct. Defendant Officers engaged in the misconduct set forth in this Complaint because they knew that the City of New York and its Police Department tolerated and condoned it.

34. The New York Police Department is responsible, by virtue of its official policies, for scores of miscarriages of justice like that inflicted upon Plaintiffs.

35. Specifically, hundreds of other cases have come to light in which New York police officers fabricated false evidence and/or suppressed exculpatory evidence in order to cause the arrests and subsequent convictions of innocent persons for serious crimes that they did not commit. This number does not even take into account the scores of false arrests that did not result in conviction.

36. For example, William Jacobs alleged that in August 1998, Jacobs was wrongfully convicted of burglary due to the false testimony of NYPD Bronx officer Pedro Corniel who

testified under oath in a grand jury proceeding that he personally witnessed Jacobs steal a water meter from construction site in the Bronx. Jacobs further alleged that he was held nine months without bail until the Bronx District Attorney's Office dropped the case. Corniel subsequently admitted that he was not in the building and was later convicted of perjury. Jacobs later settled his civil lawsuit against the City of New York.

37. In June 2011, NYPD Bronx detective Francisco Payano was charged with sixty-four counts of perjury related to his arrest of Omar Tawdeen on January 2, 2009. Detective Payano testified that he had observed Tawdeen selling crack cocaine along Bronx Boulevard while sitting in his unmarked police vehicle, but it is alleged that nearby surveillance footage revealed that no drug sales took place and Detective Payano was not even in the area at the time.

38. In July 2012, Cleveland White was arrested in the Bronx and White alleged that he was falsely charged with drug possession by Detective Greg Larsen, who testified that he witnessed White throw an orange prescription bottle full of oxycodone on the ground in a Bronx apartment complex. White's charges were dismissed when security camera footage from the incident refuted Larsen's testimony. In White's civil lawsuit against Detective Larsen and the City of New York, White alleged that Larsen and fellow Bronx officers had planted the narcotics on him upon arrest. In May 2014, Detective Larsen was indicted for perjury for the false statements he made pursuant to his arrest of White. In October 2016, White settled his case against the City of New York.

39. In January 2015, Oshae Scott was arrested by Bronx Detective Bahir Mustafa, who allegedly falsely claimed that Scott had engaged in a drug sale with an individual who sold the drugs to an undercover officer. Because of Detective Mustafa's allegedly false accusations,

Scott was forced to endure 31 hours in custody until all charges were dismissed. Scott's civil case against Detective Mustafa and the City of New York settled in March 2016.

40. Tyreik Williams alleges that in 2014 he was arrested when he arrived to pick his girlfriend up from a hairdressing apartment in a Bronx apartment. Despite having no connection with any of the residents of the apartment, Williams was arrested by Bronx officers and charged with criminal possession of the firearms discovered in one of the apartment bedrooms. In Williams' civil complaint, he alleges that he was held in custody for six days because of the officers' false statements, and the officers repeatedly offered to drop the charges if Williams would provide them with leads on stolen weapons. Williams settled his claims against the City of New York in October 2016.

41. Joanne Townes alleges that in August 2015, Townes was sitting in her car with an acquaintance when three Bronx police officers approached with their weapons drawn and removed her from her vehicle. Townes' arresting officers charged her with criminal sale of a controlled substance and related felony charges based on allegations from an undisclosed confidential informant, despite having found no narcotics on her person or in her vehicle. After all her charges were dismissed, Townes brought a civil suit against the City of New York and her arresting officers, which settled in November 2017.

42. In August 2013 former NYPD officer Genaro Morales testified that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale, and lied under oath to meet arrest quotas. (Tara Palmeri & Kirstan Conley, Cops Lied to Reach Arrest Quotas, N.Y. Post, Oct. 14, 2013).

43. At all relevant times, members of the New York Police Department, including the Defendant Officers in this action, routinely manufactured evidence against innocent persons

through unconstitutional means, including fabricating evidence and suppressing evidence of their misconduct in order to obtain false convictions.

44. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of New York, including the named Defendant Officers, fabricated reports and other evidence, which was used to wrongfully prosecute Plaintiffs.

45. The City of New York and final policymaking officials within the New York Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiffs' ongoing injuries.

46. Prior to and during 2006 to 2015, the years in which Plaintiffs were falsely arrested and charged, the City of New York operated a dysfunctional disciplinary system for New York police officers accused of serious misconduct. The New York police disciplinary apparatus almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. The New York police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in the same type of misconduct.

47. As a result of the City of New York's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, and failing to discipline officers accused of serious misconduct within the New York Police Department, officers (including the Defendant Officers here) have come to believe that they may

violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.

48. As a result of these policies and practices of the City of New York, members of the New York Police Department act with impunity when they violate the constitutional and civil rights of citizens. This includes the Defendant Officers in this case.

49. The City's aforementioned policies and practices caused the Plaintiffs' injuries in this case. Defendant Officers, including Defendant Franco, have a history of engaging in the kind of misconduct that occurred in this case, including the fabrication and concealment of evidence, and the Defendant Officers engaged in such misconduct because they had no reason to fear that the City of New York and its Police Department would ever discipline them for doing so.

50. In 2019, Defendant Franco was arrested and charged with fabricating the facts of three separate narcotics transactions that never happened, after his allegations were ultimately contradicted by surveillance video and statements from others involved in the arrests. On April 24, 2019, Franco was indicted on four counts of perjury, nine counts of filing false paperwork, and three counts of official misconduct. Three months later, a New York County grand jury added ten additional counts of perjury and related charges based on Franco's conduct in two other cases.

51. The policies and practices described in the foregoing paragraphs were also approved by the City of New York policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

**PLAINTIFFS' DAMAGES**

52. Plaintiffs in this action were all victims of Defendants' pattern of misconduct.

53. Between 2006 and 2015, each of the Plaintiffs had their constitutional rights violated by the Defendant Officers, pursuant to and consistent with their pattern of misconduct, described above.

54. Each Plaintiff was falsely charged with a crime they did not commit, and for each of them the Defendant Officers falsely charged them, and otherwise conspired to frame them.

55. Each of the criminal charges against each of the Plaintiffs was based upon false evidence that the Defendant Officers fabricated, and the Defendant Officers suppressed evidence of their misconduct from the prosecutor and the defense.

56. But for the Defendant Officers' misconduct, none of the Plaintiffs would have ever been arrested or prosecuted.

57. Due to the Defendant Officers' misconduct, each of the Plaintiffs faced years in prison.

58. Years after Plaintiffs were arrested and served their wrongful sentences, the Bronx District Attorney moved to vacate their convictions and dismiss the charges against them, along with over 200 other cases involving Defendant Franco. The court granted the request on January 20, 2022. Over two hundred and fifty additional cases have been earmarked for dismissal and the vacaturs are forthcoming.

59. The vacated convictions, however, are inadequate to repair the damage Plaintiffs have suffered as a result of the Defendants' misconduct. Plaintiffs' injuries have been devastating.

60. As a result of their wrongful convictions, Plaintiffs suffered the humiliation of being branded criminals for crimes they did not commit.

61. For example, Plaintiff Crespo, who suffers from Tourette's Syndrome, was deprived of his medication for four days while in custody, causing him to suffer debilitating tics and other symptoms. As a result of his wrongful conviction, Mr. Crespo had his license suspended for six months. Even after his license was reinstated, Mr. Crespo could not obtain work as a driver due to the blight on his record.

62. During the three years of his wrongful incarceration, Plaintiff Serrano missed the birth of two of his grandchildren and the first formative months of their lives. Mr. Serrano's imprisonment was characterized by isolation, being unable to afford phone calls to his loved ones and having spent a total of nine months in solitary confinement. In particular, Mr. Serrano could not speak with or assist his mother during his three years in custody, during which she underwent four separate surgeries for a hernia.

63. As a result of his conviction, Mr. Serrano lost his job in flooring restoration, could not renew his license, or obtain an apartment.

64. When Plaintiff Smiley was wrongfully arrested, his mother was battling cancer. During his nine months in custody, Mr. Smiley was unable to care for her or visit her during her chemotherapy treatments. Because of his wrongful incarceration, Mr. Smiley was unable to finish high school and struggles to find steady employment to this day. Mr. Smiley moved out of the Bronx because of his fear of the police, leaving behind friends, family, and his basketball team.

65. Plaintiff Wray's wrongful arrest and conviction caused him to be housed in prisons that were far from his family causing his familial relationships to deteriorate. Further, Plaintiff Wray's sister died while he was wrongfully incarcerated and he was unable to attend her funeral.

66. As a result of their wrongful convictions, Plaintiffs were deprived of opportunities to live freely as autonomous beings.

67. In addition to causing the trauma of Plaintiffs' wrongful imprisonment and loss of liberty, Defendants' misconduct caused and continues to cause Plaintiffs emotional distress.

68. The misconduct committed by Defendants was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' clear innocence, and each Defendant is liable for punitive damages, as well as other relief as described below.

**COUNT I**
**42 U.S.C. § 1983 - Due Process**
**(Fourteenth Amendment)**

69. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

70. In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiffs of their constitutional right to due process.

71. In the manner described more fully above, Defendants deliberately withheld exculpatory evidence from Plaintiffs and from state prosecutors, among others, as well as knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecutions of Plaintiffs.

72. Defendants' misconduct directly resulted in baseless arrests of Plaintiffs and in the start of and continuation of unjust criminal proceedings against Plaintiffs, denying them of their constitutional right to due process under the Fourteenth Amendment. Absent Defendants' misconduct, the prosecution of Plaintiffs could not and would not have been pursued.

73. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' innocence.

74. The misconduct described in this Count by these Defendants was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count VI.

**COUNT II**
**42 U.S.C. § 1983 - Malicious Prosecution**

75. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

76. In the manner described more fully above, the individual Defendants, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured in order to accuse Plaintiffs of criminal activity and detain, initiate, continue, and perpetuate judicial proceedings, without probable cause.

77. In so doing, these Defendants caused Plaintiffs to be arrested without probable cause, and subjected improperly to judicial proceedings without probable cause, in violation of their rights secured by the Fourth and Fourteenth Amendments. These judicial proceedings were instituted and continued maliciously, resulting in injury.

78. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiffs' clear innocence.

79. As a result of the Defendants' misconduct described in this Count, Plaintiffs suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

80. The misconduct described in this Count by these Defendants was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count VI.

**COUNT III**
**42 U.S.C. § 1983 - Conspiracy to Deprive Constitutional Rights**

81. Plaintiffs incorporate each paragraph of this complaint as if fully restated here.

82. Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiffs for crimes they did not commit and deprive them of their constitutional rights by maliciously causing Plaintiffs' prosecutions, by fabricating evidence that would be used to convict Plaintiffs; and by withholding exculpatory information from Plaintiffs' defense attorneys and the prosecution, as described above.

83. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiffs of these rights.

84. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

85. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' clear innocence.

86. As a result of Defendants' misconduct described in this count, Plaintiffs suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

87. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count VI.

**COUNT IV**
**42 U.S.C. § 1983 - Failure to Intervene**

88. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

89. During the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

90. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' innocence.

91. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

92. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count VI.

**COUNT V**
**42 U.S.C. § 1983 - Municipal Liability**

93. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

94. As described more fully herein, the City of New York is itself liable for the violation of Plaintiffs' constitutional rights. Plaintiffs' injuries were caused by the policies, practices, and customs of the New York Police Department, in that employees and agents of the

New York Police Department, including Defendant Franco in particular, fabricated false evidence implicating criminal defendants in criminal conduct, pursued wrongful convictions through profoundly flawed investigations, and otherwise violated due process in a similar manner to that alleged herein.

95. This institutional desire to close cases through abusive tactics regardless of actual guilt or innocence in order to enhance police officers' personal standing in the Department was known to the command personnel, who themselves participated in the practice.

96. The above-described widespread practices, which were so well-settled as to constitute the *de facto* policy of the New York Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the above-described widespread practices were allowed to flourish because the New York Police Department declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful convictions.

97. The constitutional violations described in this Complaint were also undertaken pursuant to the policy and practices of the New York Police Department in that the constitutional violations were committed with the knowledge or approval of persons with final policymaking authority for City of New York and the New York Police Department.

98. New York police officers who manufactured bogus criminal cases against individuals such as Plaintiffs had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter the costs. In this way, this system proximately caused

abuses, such as the misconduct at issue in this case.

99. The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiffs to suffer the grievous and permanent injuries and damages set forth above. [1]

WHEREFORE, Plaintiffs EDWIN CRESPO, DONTE SMILEY, TONY SERRANO, JOSE SANTIAGO, SIDNEY WRAY, and ANTHONY WASHINGTON respectfully request that this Court enter judgment in their favor and against New York City Police Officer Joseph Franco, Unknown Officers, and Defendant City of New York awarding compensatory damages, punitive damages, costs, attorneys' fees, and interest, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

s/ Danielle Hamilton
Attorney for Plaintiffs

Jon Loevy*
Danielle Hamilton
Renee Spence*
Kelly Jo Popkin

[1] On April 6, 2022, Plaintiffs Donte Smiley, Tony Serrano, Sidney Wray, and Anthony Washington filed their notices of claim with the New York Court of Claims. On June 29, 2022, Plaintiff Jose Santiago filed his notice of claim with the New York Court of Claims. On July 25, 2022, Plaintiff Edwin Crespo filed his notice of claim with the New York Court of Claims. Plaintiffs will amend their complaint to include state-law claims if these claims are denied.

Joshua Tepfer*
LOEVY & LOEVY
311 North Aberdeen St., 3rd floor
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902
hamilton@loevy.com

*Admission by *pro hac vice* pending