IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWIN CRESPO, DONTE SMILEY, TONY SERRANO, JOSE SANTIAGO, SIDNEY WRAY, and ANTHONY WASHINGTON,<br>    Plaintiffs,<br><br>v.<br><br>NEW YORK CITY POLICE OFFICER JOSEPH FRANCO, CITY OF NEW YORK, and other as-yet-unidentified officers of the New York Police Department,<br>    Defendants. | Case No. 7:22-cv-07345<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS

Plaintiffs Edwin Crespo, Donte Smiley, Tony Serrano, Jose Santiago, Sidney Wray, and Anthony Washinton ("Plaintiffs"), by and through their attorneys, respectfully submit this memorandum in opposition to Defendant City of New York's ("the City") motion to dismiss Plaintiffs' *Monell* claim. In support, Plaintiffs state as follows:

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

LEGAL STANDARD...............................................................................................................4

ARGUMENT .............................................................................................................................6

    I.    Plaintiffs sufficiently pled a *Monell* claim against the City ...........................................6

        A. Plaintiffs sufficiently pled an unconstitutional custom or practice ...........................7

        B. Plaintiffs sufficiently pled a failure to discipline theory .........................................10

    II.    Plaintiffs sufficiently pled an underlying constitutional violation ..............................12

        A. Malicious Prosecution........................................................................................13

        B. Due Process ........................................................................................................15

CONCLUSION.........................................................................................................................16

## INTRODUCTION

The City's Motion makes clear that the City, understandably, would like to avoid *Monell* discovery and litigation in this case. But since Plaintiffs' *Monell* claims meet the requirements of federal notice pleading, the City's Motion improperly tries to argue for the higher inapplicable summary judgment standard to be applied in at this stage. The City's Motion focuses on whether Plaintiffs' proffered evidence is true, the weight of the evidence, and the likelihood that Plaintiffs can ultimately support their claims. Unfortunately for Defendants, under *Iqbal* and *Twombly*, none of this is a part of the Court's evaluation at this stage. To be sure, Plaintiffs must sufficiently allege facts that, if true, demonstrate municipal liability in this case. But plaintiffs bringing municipal liability suits against entities like the City and New York Police Department ("NYPD") face an uphill battle to lift the veil, particularly at the outset of a case, on the internal policies, practices, and customs that caused their constitutional injuries. For that reason, the pleading standard is liberal to allow well-pled claims to proceed so that they may be decided on the merits. To decide this motion, the Court need not decide the weight of the evidence proffered or strength of Plaintiffs' claims. Right now, the Court must take Plaintiffs' factual allegations as true and draw all reasonable inferences in their favor. From there, it need only decide if the Plaintiffs pled the essential elements of their claims.

Plaintiffs have done so. Plaintiffs represent a fraction of Defendant Joseph Franco's ("Franco") victims. While a detective in the NYPD's Narcotics Bureau, from 2006 to 2015, Franco fabricated evidence that caused Plaintiffs to be wrongfully convicted. In the Narcotics Bureau, his actions were the rule, not the exception. Accordingly, Plaintiffs have named the City as part of the moving force behind their wrongful convictions. This case is their effort to push the City and Franco to repair their harm. But the City now seeks to evade discovery into their

liability based on the sufficiency of the complaint. To do so, the City elevates the pleading standard, ignores the well-pled facts, and relies on their own undeveloped arguments to attack Plaintiff's allegations. None of these tactics should prevail. Plaintiffs have plausibly alleged their municipal liability claim under 42 U.S.C. § 1983. The City's motion should be denied.

## STATEMENT OF FACTS

In 2019, Franco was indicted by two separate grand juries on a sixteen-count indictment for fabricating evidence and committing perjury in three separate cases. Dkt. 79 (Second Amended Complaint) at ¶ 29. In the wake of Franco's indictment, prosecutors in the Bronx District Attorneys' Conviction Integrity Bureau, Brooklyn District Attorney's Office, and New York City's Special Narcotics Division sought to vacate and dismiss 371 cases brought by the NYPD's Narcotics Bureau where Franco was an essential witness.[1] *Id.* at ¶¶ 8-12.

Franco's 2019 indictments were not the first inkling, particularly to his employer the NYPD, that Franco was engaged in misconduct. Years before, Franco had been sued by three different victims for fabricating weapons and drug charges and providing false testimony to secure their convictions. *Id.* at ¶¶ 26-28. These events revealed a troubling pattern—Franco was fabricating evidence and providing false testimony in his role as an officer with the Narcotics Bureau. *Id.* Even more troubling is that this misconduct was part of larger, decades-long custom, policy, and practice within the NYPD. Since the 1980s, the NYPD's Narcotics Bureau had been plagued by allegations that its officers, as an unwritten pattern and practice, fabricated evidence to justify arrests. *Id.* at ¶ 103. Because the practice was so widespread, in the 1990s, the City

---

[1] The City claims that this Court may take judicial notice of Franco's 2023 "acquittal." Dkt. 94 at 3. But Defendant Franco was not acquitted. Judge Mandelbaum dismissed his charges with prejudice because the Manhattan District Attorney's office failed to turn over evidence to the detective's lawyers on three separate occasions. He has not been tried in Brooklyn or Bronx, because the statute of limitations lapsed in 2011 and 2015, respectively, for his conduct in both boroughs. *See* Jonah E. Bromwich & Maria Cramer, *Botched Prosecution Lets Notorious Ex-Detective Walk Free*, N.Y. TIMES (Jan. 31, 2023), https://www.nytimes.com/2023/01/31/nyregion/joseph-franco-nypd-case-dismissed.html.

established the Mollen Commission to investigate these claims. *Id.* In 1994, the Commission published a sweeping report documenting widespread corruption in the Narcotics Bureau and a culture that did nothing to discipline officers who engaged in misconduct. *Id.* According to the Commission, "We found a police culture that often tolerates and protects corruption. We also found that the Department completely abandoned its responsibility to transform that culture into one that drives out corruption." *Id.*

Plaintiffs' wrongful arrests and convictions demonstrate what the City knew at the time, that the Commission's report did not stop this unconstitutional conduct. Between 2006-2015, Franco arrested Plaintiffs in the Bronx and Brooklyn and accused them of crimes they did not commit. *Id.* at ¶¶ 53-55. These arrests were premised on evidence fabricated by Franco which caused Plaintiffs' wrongful convictions and wrongful sentences. *Id.* at ¶ 56. Plaintiffs were not the only ones who were impacted by the NYPD's officers' misconduct. In 1998, NYPD Bronx officer Pedro Corniel admitted to fabricating evidence in the form of false testimony to charge William Jacobs with burglary. *Id.* at ¶ 36. Similar instances of misconduct by other NYPD officers occurred in 2011-2015. *Id.* at ¶¶ 37-42 (referencing arrests from 2011, 2012, 2014, and 2012 that were based on fabricated evidence). Indeed, in 2013, in the midst of the years Franco's misconduct impacted Plaintiffs, NYPD officer Genero Morales admitted to the pervasive culture of dishonesty within NYPD's Narcotics team. Morales testified that he and other NPYD narcotics officers fabricated evidence to falsely arrest individuals. *Id.* at ¶ 42. Additionally, in 2014, civilians were complaining to the City about NYPD officers relying on false and fabricated evidence. *Id.* at ¶ 104 (referencing a New York Civilian Complaint Review Board ("CCRB") report documented 26 allegations of fabricated evidence and false testimony). The City had notice of its officers' unconstitutional custom, policies, and practice of fabricated false evidence,

3

of Defendant Franco and the wider Narcotics Bureau more specifically, and did not stop it. It is this culture that permitted Franco to operate from 2006-2015 with impunity, and thereby caused Plaintiffs' wrongful arrest, prosecutions, and convictions.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading standard is to be construed liberally and favors resolving cases on the merits of the plaintiff's claims. *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010), It is not meant to eliminate claimants entitled to proceed to discovery and offer evidence to support their claims. *See Alzheimer's Disease Resource Center, Inc. v. Alzheimer's Disease and Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153 (E.D. N.Y. 2013). It is for this reason "dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006).

Even after *Iqbal* and *Twombly*, Rule 12(b)(6)'s plausibility requirement still aligns with Rule 8(a)(2)'s evergreen requirement that plaintiffs provide a "short and plain statement of the claim." A "plain statement" must "possess enough heft" to "show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (2007) (quoting FED. R. CIV. P. 8(a)(2)). It does not require plaintiffs to plead "detailed factual allegations" in the complaint. *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 281 (S.D.N.Y. 2015); *see also Twombly*, 550 U.S. at 556 ("Asking for plausible grounds … simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]."). In other words, all Plaintiffs must do to survive a motion to

4

dismiss is plead allegations sufficient to give the Defendants fair notice of their claims and allege the grounds that, if true, would establish liability. *Amron*, 464 F.3d at 343; *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir.2005) ("All complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory.").

At this stage, the court must "accept the allegations of the complaint as true and draw all reasonable inferences in the non-movant's favor." *Martino v. Westchester Cnty. Dep't of Corr.*, 2008 WL 144827, at *2 (S.D.N.Y. Jan. 15, 2008); *see also Twombly*, 550 U.S. at 557 (2007) (citation omitted). Legal conclusions and "formulaic recitation[s] of the elements of a cause of action" are insufficient," *id.*, but, once a claim for relief has been sufficiently pled, plaintiffs receive "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Courts may consider written instruments attached to the complaint, statements or documents incorporated by reference, and any matters of which judicial notice may be taken. *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 400 (S.D.N.Y. 2015). But that does not convert the motion to dismiss into a motion for summary judgment. *Id.* At this juncture, neither party disputes the authenticity of the evidence. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (citing Fed. R. Civ. P. 56(c)) ("[W]hen a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record. In contrast, on summary judgment the court is required to consider all relevant, admissible evidence …"). So, the task of the court is to simply "assess the legal feasibility of the complaint, not to assay the weight of the

5

evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y.2005) (internal quotation marks omitted).

## ARGUMENT

### I.    Plaintiffs sufficiently pled a *Monell* claim against the City

To state a claim for municipal liability under Monell, plaintiffs must allege "(1) a municipal custom, policy, usage, or practice that (2) is the 'moving force' behind the constitutional violation." *Corso v. City of New York*, 2018 WL 4538899, at *12 (S.D.N.Y. Sept. 20, 2018) (citations omitted). "The pleading standard for Monell claims is no greater than for any other claim subject to Federal Rule of Civil Procedure 8(a)." *Newson v. City of New York*, 2019 WL 3997466, at *7 (E.D.N.Y. Aug. 23, 2019) (*citing Jackson v. Williams*, 2017 WL 1162196, at *2 n. 1 (N.D.N.Y. Mar. 28, 2017)). To survive a motion to dismiss, Plaintiffs "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F.Supp.2d 573, 576 (S.D.N.Y. 2012). In other words, all that is required of the pleading is enough factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Newson*, 2019 WL 3997466, at *7 (quoting *Iqbal*, 556 U.S. at 678).

Much of the City's motion assails the inferences that can be drawn from Plaintiffs' proffered evidence. *See* Dkt. 94 at 10. Indeed, the City invites the Court to impermissibly draw inferences in *their* favor. But this is not the standard. When Plaintiffs' allegations are properly evaluated, Plaintiffs' *Monell* claim survives. *DiFolco v. MSNBC Cable LLC.*, 622 F.3d 104, 111, 113 (2d Cir. 2010) (stating that when considering a motion to dismiss if "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

Plaintiffs allege two Monell theories: that the City has a *de facto* policy that permits officers like Franco to falsify and fabricate evidence without fear of punishment, and that the City failed to discipline officers for this misconduct. Dkt. 79 at ¶¶ 102, 108-10, 115, 117. For the reasons discussed below, Plaintiffs have sufficiently pled both theories.

### A.    Plaintiffs sufficiently pled an unconstitutional custom or practice

To allege a *de facto* policy, plaintiffs must allege "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware." *Benitez v. City of New York*, 2018 WL 2973387, at *6 (E.D.N.Y. Jun. 13, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 277 (S.D.N.Y. 2010)). "A single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). To that end, proffered evidence cannot be assessed piece by piece. Instead, courts must look to the cumulative effect of the evidence presented and draw inferences therefrom. *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) ("The proper question is whether there is a permissible relevant inference from *all* of the fact alleged, taken collectively, not whether an inference is permissible based on any individual allegation, scrutinized in isolation.") (emphasis original) (citation omitted) (internal quotation marks omitted); *see also e.g.*, *Gadd v. S. Jordan City*, 2018 WL 6441763, at *1 (D. Utah Dec. 7, 2018) (cumulatively evaluating the evidence provided in support of *Monell* theory); *Ruffin v. D.C.*, 662 F. Supp. 3d 1, 11 (D.D.C. 2023); *Phoenix on behalf of S.W. v. Lafourche Par. Gov't*, 2020 WL 3269114, at *12 (E.D. La. June 17, 2020).

Here, Plaintiffs point to multiple sources to outline the Narcotics Bureau's longstanding *de facto* policy that allowed its officers to falsely implicate innocent people in crimes. The cumulative effect of this evidence is enough for the motion to dismiss stage.

First, Plaintiffs point to the Mollen Commission Report. The Mollen Commission was created to investigate the widespread practice of Narcotics Bureau officers fabricating evidence to justify arrests. *Id.* at ¶ 103. The 1994 report documented "a police culture that often tolerates and protects corruption" and a Department that "completely abandoned its responsibility to transform that culture into one that drives out corruption." *Id.* Litigants fail where their *Monell* claim is wholly reliant on the Mollen Report without connecting its findings to the specific facts of the case. *Rodriguez v. City of New York*, 607 F. Supp.3d 285, 294 (E.D.N.Y. 2022). "Courts that have rejected reliance on government reports like the Mollen Commission Report have done so because such reports bore no connection to the specific factual allegations of the plaintiff's case." *Buari v. City of New York*, 530 F. Supp. 3d 356, 401 (S.D.N.Y. 2021). That is not the case here. Here, where the Mollen Report is offered as one piece of evidence among others in a case alleging fabrication at its core, the report bears evidentiary weight. *See id.* (collecting cases that explain that the pleadings must "make a connection" between the Mollen Report and the complained-of misconduct). The City's objections to the Mollen Report's inclusion bear no weight.

Next, Plaintiffs point to 2013 sworn testimony by former NYPD officer Genaro Morales that he, alongside other Bronx Narcotics Bureau officers, routinely fabricated evidence of narcotics possession and falsified testimony to meet arrest quotas. *Id.* at ¶ 42. This testimony suggests that officers within Franco's own division engaged in the very behavior at-issue in this case. The City states that this evidence is irrelevant because Plaintiffs do not allege that Franco

8

shared the same motivation. Dkt. 94 at 11. But that misses the point entirely. Pleading a *de facto* policy does not require showing that officers held the same motivations for misconduct. All that is required is a showing that it is the same misconduct. The evidence bears out. CCRB evidence from the same time period shows that 90% of the 26 civilian complaints alleging officers made false statements were substantiated.[2] *Id.* at ¶ 104.

Finally, Plaintiffs highlight cases that alleged officers fabricated evidence. Litigants may allege a *de facto* policy by pointing to "complaints in other cases that contain similar allegations." *Buari*, 530 F. Supp. 3d at 398. Each case demonstrates that, prior to and during the period indicated in Plaintiffs' complaints, NYPD officers as a practice falsified and fabricated evidence with impunity. William Jacobs's 1998 conviction was predicated on false testimony by NYPD Officer Pedro Corniel, who was later convicted of perjury. Dkt. 79 at ¶ 36. NYPD Bronx detective Francisco Payano was charged in June 2011 for providing false testimony in a narcotics case. *Id.* at ¶ 37. NYPD Detective Greg Larsen's 2016 indictment for perjury resulted from fabricated evidence in a narcotics investigation. *Id.* at ¶ 38. Oshae Scott's 2015 case resulted from another false claim by an NYPD detective that Scott had engaged in a drug sale. *Id.* at ¶ 39. Tyreik Williams' 2016 civil case was predicted on a prior arrest secured by false statements. *Id.* at ¶ 40. Each case evidences the same conduct—an officer fabricating or falsifying evidence one right after the other. The City's argument that these cases are irrelevant to the claims ignores their plain facts.

If taken as true and with all reasonable inferences in the Plaintiffs' favor, these cases, read in tandem with Plaintiffs' other evidence, reinforce the plausibility that the City was on-

---

[2] Plaintiffs point to the CCRB complaints to show notice. There are no allegations that any officers were disciplined once the complaints were substantiated. In fact, Plaintiffs' wrongful convictions, Franco's continued employment, and Franco's indictment for similar misconduct occurring in 2017 and 2018 suggests otherwise.

9

notice for a *de facto* policy. Taken together, this evidence illustrates a plausible allegation that a widespread practice of fabrication and falsification within the NYPD's Narcotics Bureau persisted over the past thirty years—a practice that obviously could lead to constitutional violations. Franco, an officer in the Narcotics Bureau, participated in this conduct when he wrongfully arrested and charged Plaintiffs. Dkt. 79 at ¶¶ 25-29, 112. And, despite prior complaints about him and other officers, did not act. *Id.* at ¶ 113. Plaintiffs' Complaint alleges more specifically that the City is liable pursuant to *Monell* because its policies, practices, and customs were the moving force behind Franco and others to fabricate false evidence implicating Plaintiffs in criminal conduct, pursue wrongful convictions through profoundly flawed investigations, and otherwise violate Plaintiffs' due process rights. *Id.* at ¶¶ 102, 117; *Buari*, 530 F. Supp. 3d at 402 (finding that plaintiff's reliance on the Mollen Commission Report supported a reasonable inference of the *de facto* policy or custom that caused plaintiff's constitutional deprivation); *Rodriguez*, 607 F. Supp. 3d at 293.

      **B.**     **Plaintiffs sufficiently pled a failure to discipline theory**

To allege a failure to discipline theory, a plaintiff must plead that "(1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Jackson v. Nassau Cty.*, 552 F. Supp.3d 350, 378-79 (E.D.N.Y. 2021) (quoting *Treadwell v. County of Putnam*, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016)). For such a claim, "there is no requirement that complaints result in a formal finding of misconduct … to support findings of failure to supervise." *Id.* (quoting *Felix v. City of New York*, 344 F. Supp. 3d 644, 662 (S.D.N.Y. 2018)). At this stage of the litigation, courts acknowledge that it is unlikely a plaintiff would have information about the municipality's specific conduct and failures to discipline pre-discovery.

10

*Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage."). That principle remains after *Iqbal*. *See Jackson*, 552 F. Supp.3d at 380 n.10 (discussing this observation in the failure to discipline context, citing *Amnesty America*, and collecting cases that recognize, post-*Iqbal*, that while some district courts have emphasized that a plaintiff must do more than simply "recite their theory of liability," this standard is "context-specific" and requires a recognition of what a plaintiff may reasonably learn before engaging in discovery).

  Here, Plaintiffs have alleged that the *de facto* policy allowing officers in the Narcotics Bureau to fabricate evidence for decades persisted because the City operated a broken disciplinary system that failed to identify, punish, and deter this misconduct. *Id.* at ¶¶ 25-29, 109-10, 112-13, 115; *see also supra* Section (I)(A). Instead, without fear of reprisal, officers were emboldened to frame innocent people because they knew they would not face consequences for their actions. *Id.* at ¶¶ 109-10, 115. Plaintiffs allege that the City maintained no system for tracking complaints against officers for this misconduct, leaving the City ill-equipped to identify repeat offenders. *Id.* at ¶ 108.

  This system allowed Franco to go unpunished for his own misconduct. As before, the evidence against him must be evaluated cumulatively with the other evidence presented. Franco was a detective in the NYPD's Narcotics Bureau, operating in Bronx and Brooklyn. Both the Narcotics Bureau broadly, and the Bronx division specifically, have documented events over multiple decades where officers routinely fabricated evidence against innocent persons. Even before his 2019 indictment, the City was on-notice for suits in 2016 and 2017 where Franco was accused of fabricating evidence against innocent persons. *Id.* at ¶¶ 26, 28. These allegations, if

11

taken as true and given all reasonable inferences in the Plaintiffs' favor, sufficiently allege that the City failed to act in response to a decades-long pattern of unconstitutional conduct. *See Buari*, 530 F. Supp. 3d at 402 (finding that plaintiff had plausible pled a failure to discipline theory under *Monell* when there were allegations demonstrated that NYPD officials had notice, there was a history of the alleged misconduct, it was apparent the misconduct could lead to constitutional violations, and the misconduct caused plaintiff's injury).

## II. Plaintiffs sufficiently pled an underlying constitutional violation

To state a claim under section 1983, a plaintiff must allege that state officials, acting under color of state law, deprived them of a right guaranteed to them by the Constitution or federal law. 42 U.S.C. § 1983; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Here, Plaintiffs allege two constitutional violations: due process, Dkt. 79 at ¶¶ 77-82 and malicious prosecution, *id.* at ¶¶ 83-88.[3]

The City's motion disposes of any real discussion of the essential elements of each claim. Instead, the City claims that Plaintiffs' Second Amended Complaint is flawed because Plaintiffs have not provided detailed factual allegations of Franco's misconduct in their arrests and prosecution. Because of this, the City states, there is no *Monell* claim. Dkt. 94 at 5-6. Not so. Each Plaintiff sufficiently pled the essential elements of their allegations—that Franco violated their constitutional rights when he fabricated false evidence to initiate and continue their prosecution, and these false and fabricated evidence, and the suppression of his misconduct, caused their wrongful convictions.[4]

---

[3] In the Second Amended Complaint, Plaintiffs have only alleged claims against Individual Defendant Franco and therefore do not maintain their conspiracy and failure to intervene claims. These claims are being withdrawn.
[4] The question of whether Plaintiffs have sufficiently pled his claims against Franco is not before this Court as Franco has answered Plaintiffs' Second Amended Complaint. Dkt. 90. Nevertheless, Plaintiffs contend that they have sufficiently alleged their claims. However, if the Court is inclined to dismiss the individual claims against Franco, Plaintiffs ask that they be given leave to amend the complaint. "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

### A.    Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment ... and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). "[A] lack of probable cause generally creates an inference of malice." *Id.* at 163 (alteration omitted). Under section 1983, the plaintiff must also show "that there was ... a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 375 (S.D.N.Y. 2015).

The existence of probable question to be decided by a jury, rather than determined at the motion to dismiss stage. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997). Even so, Plaintiffs sufficiently plead that their arrests and convictions lacked probable cause. Each Plaintiff pled that they were criminally prosecuted under New York law for crimes they did not commit. Dkt. 79 at ¶¶ 61-67. The only evidence used to arrest and prosecute them was false and fabricated. *Id.* at ¶¶ 55-57. When the Bronx District Attorney and Brooklyn District Attorney learned of Franco's misconduct, i.e. his history of fabricating false evidence to cause arrests and repeatedly framing innocent people, the District Attorneys moved to vacate Plaintiffs' criminal convictions and dismiss their charges because Franco served as the essential witness in each case. *Id.* at ¶¶ 5-10, 60-66. The law is clear. Police cannot rely on false evidence to manufacture probable cause.

13

*See Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (stating that probably cause presumption is rebuttal by showing that evidence was misrepresented or falsified).

Each Plaintiff suffered restraints on their liberties as a result of their wrongful convictions. Plaintiff Crespo spent time in custody without his medication and had his license suspended for six months. *Id.* at ¶ 69. Both Plaintiff Washington and Santiago were arrested and convicted for crimes they did not commit. *Id.* at ¶ 117 n.1. Plaintiff Wray spent time in prison and suffered post-release probation restrictions. *Id.* at ¶ 73. Plaintiff Serrano was incarcerated for three years and suffered collateral consequences in his employment and housing as a result of his conviction. *Id.* at ¶¶ 70-71. Plaintiff Smiley spent nine months in custody. *Id.* at ¶ 72.

These facts are a far-cry from "base assertions … amount[ing] to nothing more than a formulaic recitation of the elements." *Twombly*, 550 U.S. at 554-555. At the pleading stage, a plaintiff has not yet unearthed facts through discovery. A plaintiff's terse narrative of the underlying facts of their constitutional violation does not warrant dismissal where it goes to the essential elements of a claim. *See Craig v. Hawkins*, No. 09 C 7099, 2010 WL 2350582, at *2 (N.D. Ill. June 9, 2010); *Green*, 96 F. Supp. 3d 263, 281 (S.D.N.Y. 2015) ("detailed factual allegations" are not required in a complaint). Nor should the City benefit from the opaque nature of narcotics investigations, which prevented Plaintiffs from providing more detail of the circumstances of their arrests at the pleading stage. *See Concentra Health Servs., Inc.*, 496 F.3d at 780 ("A complaint should contain information that one can provide and that is clearly important …"); *cf. Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 723 (2d Cir. 2013) (concluding that the plaintiffs' "imprecise pleading is particularly inappropriate ... where the plaintiffs necessarily ha

14

[d] access, without discovery, to … specific information from which to fashion a suitable complaint").

**B.      Due Process**

Plaintiffs have pled at their due process rights were violated because their prosecutions were premised only on false evidence Franco fabricated, and this evidence of Franco's misconduct—evidence that would have exculpated Plaintiff and impeached the integrity of the investigation—was suppressed. Dkt. 79 at ¶¶ 53-56, ¶ 57 ("But for Defendant Officers' misconduct, none of the Plaintiffs would have ever been arrested or prosecuted."), ¶ 59 ("Due to the Defendant Officers' suppression of their misconduct, Plaintiffs were prosecuted by the Officers of the Bronx and Brooklyn District Attorneys and wrongfully convicted.").

A due process violation is shown "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, and the use of the fabricated evidence causes a deprivation of liberty the officer violates the accused's due process rights. *Ricciuti*, 124 F.3d at 130; *Bailey v. City of New York*, 79 F. Supp. 3d 424, 446 (E.D.N.Y. 2015). A plaintiff need not have proceeded to a full trial on the merits in order to have an actionable section 1983 claim based on the denial of a fair trial. *Id.* at 127; *Wellner v. City of New York*, 393 F. Supp. 3d 388, 395-397 (S.D.N.Y. 2019), *reconsideration denied*, 2019 WL 5538064 (S.D.N.Y. Oct. 25, 2019). A due process claim can also be based on a police officer's failure to disclose material exculpatory or impeaching evidence from the plaintiff. *See McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003); *United States v. Ohiri*, 133 F. App'x 555, 556 (10th Cir. 2005); *Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007); *see also Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014). The suppressed evidence must be favorable to the accused, suppressed by a state actor, resulting in prejudice. *Id.* at 133; *Kyles v. Whitley*,

15

514 U.S. 419, 437, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490 (1995) (articulating that police have a *Brady* obligation).

Here, Plaintiffs allege that the sole basis for their wrongful arrest and prosecution was the false evidence Franco fabricated. In the absence of this misconduct, Plaintiffs would not have been arrested or been hailed to court. Further, it was because of Franco's suppression of his misconduct that Plaintiffs were prosecuted and wrongfully convicted. From this the Court can reasonably infer that if Franco has disclosed, rather than suppressed, that the central and only evidence showing that Plaintiffs had committed a crime was false and fabricated, that this disclosure would have exculpated Plaintiffs and terminated their prosecution. Taken as true, Plaintiffs' allegations establish a plausible due process claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant City of New York's motion to dismiss Plaintiffs' *Monell* claim pursuant to Rule 12(b)(6).

Respectfully submitted,

/s/ Megan Porter
*One of Plaintiffs' Attorneys*

Jon Loevy
Megan Porter
Renee Spence
Tara Thompson
LOEVY & LOEVY
311 North Aberdeen St., 3rd floor
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902
porter@loevy.com

## **CERTIFICATE OF SERVICE**

      I, Megan Porter, an attorney, hereby certify that the foregoing response to Defendant City of New York's Motion to Dismiss was served on March 5, 2024 using the Court's CM/ECF system, which effected service on all counsel of record listed below.

                                                           /s/ Megan Porter
                                                           *One of Plaintiffs' Attorneys*